## IN THE CIRCUIT COURT OF SUNFLOWER COUNTY, MISSISSIPPI

**Edward Dalon, Surviving Spouse**
**and Administrator of the Estate of**
**Judy L. Dalon, Deceased,**

FILED

JUN 0 2 2015

SHARON MCFADDEN
BY_____D.C.

       **Plaintiff,**

**vs.**

Cause No. 2015-0134
**JURY DEMANDED**

**Ruleville Nursing and Rehabilitation**
**Center, LLC,**

       **Defendant.**

## PLAINTIFF'S COMPLAINT FOR PERSONAL INJURIES, MEDICAL MALPRACTICE, AND WRONGFUL DEATH

COMES NOW Plaintiff Edward Dalon, Surviving Spouse and Administrator of the Estate of Judy L. Dalon, Deceased, and sues Defendant Ruleville Nursing and Rehabilitation Center, LLC for personal injuries, medical malpractice, and wrongful death. For said cause of action, Plaintiff would state to the Court as follows:

### I. JURISDICTION AND PARTIES

1.     Plaintiff Edward Dalon ("Plaintiff" or "Mr. Dalon") is an adult resident citizen of the State of Mississippi. Mr. Dalon is the surviving husband of Judy L. Dalon, deceased. At all pertinent times, Edward Dalon and Judy L. Dalon were husband and wife.

2.     The Estate of Judy L. Dalon, Deceased, has been opened in the Chancery Court of Sunflower County, Mississippi. *See* attached Exhibits 1 (Order Opening Estate, Authorizing Appointment of Administrator) and 2 (Letters of Administration). Mr. Dalon brings suit individually and as administrator of the Estate of Judy L. Dalon, Deceased.

3.     The decedent, Judy L. Dalon died on June 10, 2013.

4.      Defendant Ruleville Nursing and Rehabilitation Center, LLC ("Ruleville Nursing and Rehabilitation") is a Mississippi limited liability company.  It owns, operates, manages, and administers the nursing home facility located at 800 Stansel Drive, Ruleville, Mississippi 38771. Ruleville Nursing and Rehabilitation, at all times relevant herein, was conducting and doing business in Sunflower County, Mississippi, where patients/residents were treated and cared for.  It may be served with process through its registered agent, United Corporate Services, Inc., 401 East Capitol 100-M, Heritage Building, Jackson, Mississippi 39201.

5.      Ruleville Nursing and Rehabilitation has nurses, physicians, administrators, dieticians, aides, orderlies, therapists, agents and/or employees that act for and on its behalf in the operation of said nursing home facility.  While caring for and treating the decedent, the tortious acts and omissions of said nurses, physicians, administrators, dieticians, aides, orderlies, therapists, agents and/or employees were in connection with their duties at Ruleville Nursing and Rehabilitation, and they were acting within the scope of their employment and/or agency. Ruleville Nursing and Rehabilitation is thus legally responsible and vicariously liable for the negligence of said persons pursuant to *respondeat superior* and agency principles.

6.      Venue and jurisdiction are proper in this action in that Plaintiff's claim arises out of the negligent acts and/or omissions of Defendant and its agents/employees, all of which occurred in Sunflower County, Mississippi.

7.      This Court has proper jurisdiction and venue over this action and the parties hereto. This lawsuit is timely filed pursuant to applicable Mississippi law.

8.      Plaintiff has complied with the provisions of Miss. Code Ann. § 15-1-36 by mailing written notice of claim to Defendant (at the address for its registered agent for service of process and

2

its current business address), which notified Defendant of Plaintiff's intention to file this wrongful death lawsuit regarding the death of his wife, Judy L. Dalon, on or about June 10, 2013. *See* Exhibit 3.

9.      Plaintiff has timely complied with the notice requirements of Miss. Code Ann. § 15-1-36 by giving written notice of claim to Defendant at least sixty (60) days prior to filing this complaint.

10.     Plaintiff brings this lawsuit against Defendant pursuant to the provisions of the Mississippi wrongful death statute, Miss. Code Ann. § 11-7-13, for the wrongful death of his wife, Judy L. Dalon, on June 10, 2013.  Plaintiff is entitled to recover any and all damages recoverable under Miss. Code Ann. § 11-7-13, including those damages recoverable individually and on behalf of the Estate of Judy L. Dalon, deceased.  This cause is brought in two counts, one on behalf of the Estate of Judy L. Dalon, deceased, and the second count for the damages recoverable by the decedent's survivor, Mr. Dalon.

## II.  FACTUAL ALLEGATIONS

11.     Mrs. Dalon was admitted to Ruleville Nursing and Rehabilitation Center on or about March 19, 2013.  She was 57 years old.

12.     Mrs. Dalon presented with depressive disorder, hypothyroidism, heart disease, Chorea associated with Huntington's Disease, cognitive impairment related to short and long term memory deficit, and impaired decision-making and communication. She was noted upon admission to be alert, but disoriented, forgetful, and confused.  She was placed on a regular, no added salt diet with no fluid restrictions. The care plan indicated that the prospective approach would be to offer simple choices with daily decisions; observe for changes in cognitive status; use short, direct phrases

3

when communicating; and provide Mrs. Dalon with cues and reminders needed to assist with her memory and orientation.

13.     During her previous stay at Cleveland Nursing and Rehabilitation Center in February and March of 2013, Mrs. Dalon had been placed on a puree diet with no added salt and later changed to mechanical soft diet.

14.     From March 26-31, 2013, Ruleville Nursing and Rehabilitation noted that Mrs. Dalon refused to eat her meals.

15.     On April 9, 2013, Mrs. Dalon was noted to be demonstrating decreased mental status. Her pupils were dilated with slow response. Orders were given to transfer Mrs. Dalon to North Sunflower Medical Center for evaluation.

16.     On April 10, 2013, Mrs. Dalon returned to Ruleville Nursing and Rehabilitation. On that date, it was noted that Mrs. Dalon was receiving a regular, no added salt diet. Her appetite was noted to vary according to her behavior.

17.     On April 15, 2013, Mrs. Dalon was noted to be observed mostly in a catatonic state related to depressive disorder. Her cognitive status and long and short term memory were noted to be impaired. It was note that she resisted care at times and could be verbally/physically aggressive. Her appetite was noted to vary.

18.     On May 9, 2013, a nutritional re-evaluation was performed. Mrs. Dalon was noted to have a diagnosis of psychosis. It was related that she had said in her interview that "God told me to come here and not to eat." It was noted that she might need a psychiatric evaluation to alter her medications.

19.     On May 14, 2013, Mrs. Dalon was noted to be in a catatonic state at times related to

4

her depressive disorder. She was noted to be staring out the window for long periods of time. Her cognitive status and long and short term memory were noted to be impaired. Repetitive movements, crying episodes, and unpleasant mood were noted. Her appetite was noted to vary. Mrs. Dalon was also noted to resist/refuse care at times.

20.    On the morning of May 16, 2013, Mrs. Dalon tilted her wheelchair back and then over. She suffered a superficial break in the skin on the back of her head, which resulted in bleeding. The physician was notified and he ordered neuro checks.

21.    On the morning of May 18, 2013, Mrs. Dalon was found sitting in her wheelchair in front of the shower. She was noted to have suffered a grand mal seizure with facial twitching and jerking in her arms and legs. Mrs. Dalon was placed in her bed, but continued to suffer seizures. Orders were given to transfer Mrs. Dalon to North Sunflower Medical Center for evaluation. She returned to Ruleville Nursing and Rehabilitation later that afternoon.

22.    On May 21, 2013, Mrs. Dalon suffered bruising to her right shoulder and abrasions to her right forearm and elbow. Mrs. Dalon fell that morning, although she did not recall the details thereof. She was noted to be combative with redirection needed.

23.    On May 25, 28, 29, and 30, 2013, Mrs. Dalon ate none of her solid foods.

24.    During the course of her eating dinner on the evening of June 5, 2013, Mrs. Dalon's head was noted to be drooping down slowly in her wheelchair, with pale skin and cyanotic lips. Mrs. Dalon was unresponsive with no vital signs. Abdomen thrusts were started, but no food was expelled. Code was called and an ambulance was notified. Mrs. Dalon was taken to her room and placed in the supine position on the bed. She was thereafter placed on a stretcher and transferred to North Sunflower Medical Center.

5

25.     Mrs. Dalon was transferred later that night to Delta Regional Medical Center via ambulance. It was noted in the hospital record that she had been found slumped over and had aspirated on a hot dog. She presented in cardiac arrest (onset three hours prior) with initial cardiac rhythm asystole. She had already been intubated. She remained disoriented and unresponsive. She was placed on a ventilator.

26.     Mrs. Dalon was transferred to the University of Mississippi Medical Center ("UMMC") on June 6, 2013, status post-cardiac arrest. She was presumed to have aspirated on a hot dog the evening before. Upon admission, she was noted to be without papillary response or gag reflex. She was placed on ventilator support at UMMC. The prognosis was noted to be very poor.

27.     The UMMC record notes that the arrest was witnessed and that there was a down time of approximately two minutes before CPR was initiated. It was also noted that she had remained asystole before a pulse was recovered. It was unclear how long she had remained pulseless. The UMMC record further notes that Mr. Dalon had spoken with his wife approximately two hours prior to the choking incident.

28.     On June 7, 2013, Mrs. Dalon underwent an MRI of the brain at UMMC. The findings were compatible with anoxic brain injury, including exaggeration of the normal gray-white differentiation on diffusion weighted images and increased signal on diffusion weighted images.

29.     On June 10, 2013, an x-ray of Mrs. Dalon's chest showed an interval increase in bilateral perihilar airspace opacities and interstitial prominence favored to represent worsening pulmonary edema. A left pleural effusion was suspected.

30.     On the evening of June 10, 2013, Mrs. Dalon died following extubation at UMMC. The certificate of death listed the cause of death as cardiac arrest due to hypoxic respiratory failure

6

and aspiration pneumonia/pneumonitis. *See* Ex. 4.

## III. NEGLIGENCE

31. Plaintiff alleges that Defendant, institutionally and acting by and through its nurses, physicians, administrators, dieticians, aides, orderlies, therapists, agents and/or employees, was negligent in failing to adhere to the standard of care expected and required of nursing home facilities in this jurisdiction under the same or similar circumstances. Such medical negligence includes, but is not limited to, the following acts and omissions:

(a) allowing the decedent to eat solid food, including a hot dog, given her known mental status and pre-existing conditions, which included, without limitation, severe cognitive impairment, disorientation, memory deficit, and psychotic disorder, and the associated choking hazards;

(b) implementing a regular, solid food diet for the decedent given her known mental status and pre-existing conditions, which included, without limitation, severe cognitive impairment, disorientation, memory deficit, and psychotic disorder, and the associated choking hazards;

(c) allowing the decedent to eat solid food, including a hot dog, given the common knowledge that hot dogs should not be served to nursing home residents given the significant danger of choking and aspiration;

(d) implementing a regular, solid food diet for the decedent given the common knowledge that hot dogs should not be served to nursing home residents given the significant danger of choking and aspiration;

(e) failing to appropriately train, supervise, and monitor its agents and employees with respect the implementation of appropriate diets for residents such as the decedent;

(f) failing to implement appropriate policies and procedures with respect to when a solid diet is inappropriate for residents with pre-existing conditions such as the decedent;

(g) failing to appropriately monitor the decedent while she was eating solid foods;

(h) failing to provide the decedent with basic and necessary care and supervision;

(i) failing to exercise reasonable care under the circumstances; and

7

(j)     such other negligent acts and omissions as may be proven at trial.

That each of the aforesaid negligent acts and/or omissions of Defendant, both institutionally and through it nurses, physicians, administrators, dieticians, aides, orderlies, therapists, agents and/or employee, directly and proximately caused severe personal injuries to Mrs. Dalon, and ultimately her death.

32.     To the extent that Plaintiff's claims are deemed to be based on common law negligence and not medical malpractice, Plaintiff is entitled to recover for all of the damages allowed under applicable Mississippi common law and/or Mississippi tort law.

## IV. DAMAGES

33.     Plaintiff is entitled under the Mississippi wrongful death statute, Miss. Code Ann. § 11-7-13, to bring these claims against Defendant, and to recover any and all damages for the decedent's wrongful death as provided for therein.

34.     As a direct and proximate result of the negligence, malpractice, wrongful acts and/or omissions of Defendant, institutionally and by and through its nurses, physicians, administrators, dieticians, aides, orderlies, therapists, agents and/or employees, Mrs. Dalon suffered, without limitation, cardiac arrest, brain injury, a painful and intrusive hospitalization, physical pain and suffering, mental pain and suffering, severe emotional distress, and ultimately the loss of her life.

35.     As a direct and proximate result of the negligence, malpractice, wrongful acts and/or omissions of Defendant, institutionally and acting by and through its nurses, physicians, administrators, dieticians, aides, orderlies, therapists, agents and/or employees, Plaintiff lost the love, affection, comfort, and companionship of his wife. Plaintiff is thus entitled to recover loss of consortium damages.

36.     Defendant is liable to Plaintiff for all the compensatory damages which he is entitled to recover, individually and on behalf of the decedent, including, but not limited to: (a) the decedent's mental and physical pain, anguish, and suffering prior to her death; (b) medical expenses; (c) funeral expenses; (d) mental anguish suffered, and to be suffered in the future, by Plaintiff; (e) loss of consortium; (f) all other pecuniary injuries; and (g) the net cash value of the life expectancy of the decedent.

37.     Plaintiff specifically reserves the right to amend this complaint and plead further in this cause.

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands judgment, pursuant to Miss. Code Ann. § 11-1-59, from the Defendants in an amount within the jurisdictional limits of this Court and in excess of the sum of $10,000.00, such amount to include, but not be limited to, compensatory damages, prejudgment interest, and the costs of the Court.

**Plaintiffs demand a jury trial as to all issues in this case.**

Respectfully Submitted,

BURCH, PORTER & JOHNSON, PLLC

David E. Goodman, Jr. (Miss. Bar No. 100365)
130 North Court Avenue
Memphis, Tennessee 38103
(901) 524-5000

Attorneys for Plaintiff

9

## CERTIFICATE OF CONSULTATION

Pursuant to Miss. Code Ann. § 11-1-58(1), I do hereby certify that I have reviewed the facts of this case and consulted with at least one expert qualified pursuant to the Mississippi Rules of Civil Procedure and the Mississippi Rules of Evidence who is qualified to give expert testimony as to standard of care or negligence and who I reasonably believe is knowledgeable in the relevant issues involved in this particular action, and I have concluded, on the basis of such review and consultation, that there is a reasonable basis for the commencement of this action.

David E. Goodman, Jr.

Date: June 1, 2015